```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


HESTON EMERGENCY HOUSING, L.P.,  §
and NAJI AL-FOUZAN,              §
                                 §
     Plaintiffs,                 §
                                 §
v.                               §   CIVIL ACTION NO. H-11-1121
                                 §
TEXAS DEPARTMENT OF HOUSING      §
AND COMMUNITY AFFAIRS, MICHAEL   §
GERBER, MARTIN RIVERA, JR.,      §
MARISA CALLAN and TIMOTHY        §
IRVINE,                          §
                                 §
     Defendants.                 §
```

MEMORANDUM AND ORDER

Pending is Defendants Texas Department of Housing and Community Affairs's ("TDHCA"), Michael Gerber's ("Gerber"), Martin Rivera, Jr.'s ("Rivera"), Marisa Callan's ("Callan"), and Timothy Irvine's ("Irvine," collectively "Defendants")[1] Motion to Dismiss Plaintiffs' [First] Amended Complaint (Document No. 32).[2] Based on

---

[1] Defendants Gerber, Rivera, Callan, and Irvine will be referred to collectively as the "Individual Defendants." According to Plaintiffs' complaint, the Individual Defendants were employees of the TDHCA. Plaintiffs state that Gerber was Executive Director of the TDHCA, Rivera was Contract Administration Coordinator, Callan was Project Director for the Texas Alternative Housing Pilot Program, and Irvine was Chief of Staff of the TDHCA. Document No. 27 at 2-3.

[2] Plaintiffs repled their case after being served with Defendants' Motion to Dismiss (Document No. 12), which pointed out most of the same defects that Defendants urge once again in the present motion. Defendants' first Motion to Dismiss (Document No. 12), which was addressed to Plaintiffs' original complaint, is therefore DENIED as moot.

the motion, response, and applicable law, the Court concludes that the motion should be granted.

## I. Background

The events giving rise to this complaint took place in the aftermath of the 2005 hurricane season, as efforts were made at the national and state level to address housing concerns of people on the Gulf Coast affected by the storms.[3] Plaintiff Heston Emergency Housing, L.P. ("Heston") is in the business of producing emergency housing units; Plaintiff Naji Al-Fouzan ("Al-Fouzan," collectively "Plaintiffs") is the limited partner in Heston.[4] According to Plaintiffs' complaint, the TDHCA received federal funding--from money the United States Congress appropriated for an Alternative Housing Pilot Program ("AHPP")--to provide emergency housing to those affected by the hurricanes and contracted with Heston to provide those houses.[5]

Plaintiffs allege that Congress--and Congresswoman Sheila Jackson Lee ("Representative Lee"), in particular--began to investigate TDHCA's handling of the federal funding.[6] In the

---

[3] Document No. 27 at 3.

[4] Id. at 2, 4.

[5] Id. at 3-4.

[6] Id. at 6.

course of that investigation, Plaintiffs allege that they were told on more than one occasion that they were not to make any comments to Representative Lee. This admonition was allegedly made by Defendant Gerber and also by one or more of the other Individual Defendants. Plaintiffs allege, as one illustration, that Defendant Gerber "specifically told Al-Fouzan he and Heston would suffer were Gerber to hear, learn, or believe that Rep. Lee (or her staff) had, in substance, communication of any type with Al-Fouzan or Heston staff not allowed, authorized, or approved by TDHCA."[7] Plaintiffs also allege that the Individual Defendants developed the belief that Heston had provided information to Representative Lee and retaliated against Heston based on that belief. In retaliation for the speech Plaintiffs were believed to have made, the Individual Defendants made statements in a TDHCA board meeting "to place HESTON and AL-FOUZAN in a false light," required Heston to undergo multiple audits, falsely reported on multiple occasions (and to third parties) that Heston had not fulfilled its contract obligations, and terminated the contract between Heston and TDHCA on the basis that Heston was in default.[8]

Plaintiffs bring claims against the Individual Defendants under 42 U.S.C. § 1983 for (1) "retaliation against on [sic] the right of free speech," (2) "violation of Fifth Amendment,"

---

[7] Id. at 9.

[8] Id. at 10-12.

(3) "violation of Fifth Amendment Right to Equal Protection of the Laws," and (4) "violation of 42 U.S.C. § 1983 by deprivation of due process."[9]  All claims are alleged against the Individual Defendants; none against the TDHCA.  Defendants move to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) and to dismiss Plaintiff Al-Fouzan's free speech retaliation claim pursuant to Rule 12(b)(1).

## II.  Discussion

### A.  Legal Standards

Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks.  See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981); Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings.  Paterson, 644 F.2d at 523.  When presented with a facial challenge to subject matter

---

[9] Id. at 12-16.

jurisdiction, the Court examines whether the allegations in the pleadings are sufficient to invoke the court's subject matter jurisdiction, assuming the allegations to be true. Id.; Simmang v. Tex. Bd. of Law Examiners, 346 F. Supp. 2d 874, 880 (W.D. Tex. 2004). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing the attack on the merits. Ramming, 281 F.3d at 161; *see also* Simmang, 346 F. Supp. 2d at 880.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

B.  Standing of Plaintiff Al-Fouzan

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiff Al-Fouzan's free speech retaliation claim. They assert that the only injury alleged in the complaint was the termination of the contract between Heston and the TDHCA, and any damages to Heston as a result of the termination of that contract are not personal to Al-Fouzan and cannot be used to give him standing.[10] Plaintiffs do not controvert this argument.

Because standing is a threshold issue in determining whether the Court has subject matter jurisdiction, it must be considered before addressing the claims, even if not raised by the parties. Juidice v. Vail, 97 S. Ct. 1211, 1215 (1977). "Article III

---

[10] Document No. 32 at 6.

standing, at its 'irreducible constitutional minimum', requires Plaintiffs to demonstrate: they have suffered an 'injury in fact'; the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely . . . be redressed by a favorable decision.'" Public Citizen, Inc. v. Bomer, 274 F.3d 212, 217 (5th Cir. 2001) (quoting Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992)). "'[A]n injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id.[11] A plaintiff must prove standing for every claim. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1867 (2006).

In their count alleging free speech retaliation, Plaintiffs assert that "HESTON suffered damages in the form of loss of the benefits of the AHPP Grant Contract, damage to its reputation, and a concomitant loss of other government business . . . ."[12] In a corporation or partnership, a partner, employee, shareholder, or

---

[11] Defendants base their challenge to Al-Fouzan's standing on the constitutional standing requirements and do not make a prudential limitations argument. *See, e.g.,* Ensley v. Cody Res., Inc., 171 F.3d 315, 319 (5th Cir. 1999) (describing the difference between constitutional and prudential standing).

[12] Document No. 27 at 14. Although Plaintiffs state at the beginning of their complaint that Heston and Al-Fouzan are jointly referred to as Heston "for ease of reference," they refer to the Al-Fouzan by name throughout the complaint and the reference to Heston in this case seems to refer to Heston and not Al-Fouzan. Id. at 2.

7

officer does not have standing to sue on his own behalf when the only alleged injury was to the partnership or corporation and not to himself personally. Cates v. Int'l Tel. & Tel. Corp., 756 F.2d 1161, 1181 (5th Cir. 1985); Duran v. City of Corpus Christi, 240 F. App'x 639, 641-42 (5th Cir. 2007) (unpublished op.); Garzes v. Lopez, 281 F. App'x 323, 325-26 (5th Cir. 2008) (unpublished op.); Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006); *but see* Ensley, 171 F.3d at 319-20 (finding that a shareholder's injury of diminution in value of shares was sufficient to state an injury in fact to satisfy constitutional justiciability requirement).

In considering the application of this principle to free speech retaliation, the Fifth Circuit has twice concluded that it did not matter whether the individual bringing the suit made the constitutionally protected speech if the only alleged injury was to the company and not to himself. Duran, 240 F. App'x at 642-43 (citing Pagan, 448 F.3d at 28-30); Garzes, 281 F. App'x at 325-26 (applying Duran to similar facts).

Because Plaintiffs neither identify any damages individually attributable to Al-Fouzan nor challenge Defendants' standing argument, Plaintiff Al-Fouzan has not met his burden to prove that he has standing to bring the free speech retaliation claim.

C.   <u>42 U.S.C. § 1983</u>

Plaintiffs seek relief against the Individual Defendants under 42 U.S.C. § 1983 for alleged violations of their constitutional rights.  Section 1983 does not create substantive rights, but rather is merely a procedural rule that provides a private cause of action for redressing a violation of federal law or "vindicating federal rights elsewhere conferred." <u>Albright v. Oliver</u>, 114 S. Ct. 807, 811 (1994) (quoting <u>Baker v. McCollan</u>, 99 S. Ct. 2689, 2694 n. 3 (1979)).  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." <u>Johnston v. Harris Cty. Flood Control Dist.</u>, 869 F.2d 1565, 1574 (5th Cir. 1989).  To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 525 (5th Cir. 1994).  A § 1983 plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. <u>Schultea v. Wood</u>, 47 F.3d 1427, 1433 (5th Cir. 1995).

9

D.  <u>Claims</u>[13]

  1.  <u>Free Speech Retaliation</u>

In Count I of the First Amended Complaint, Plaintiffs allege a violation of their First Amendment free speech rights based on retaliation by the Individual Defendants.[14] Nowhere in Plaintiffs' complaint do they allege that they made any protected speech. Plaintiffs instead contend that one or more of the Defendants *believed* that they had spoken to Representative Lee and/or to others and retaliated against Plaintiffs *based on that belief*.[15] The Individual Defendants allegedly retaliated against Plaintiffs by falsely representing that Plaintiffs were "delinquent in their

---

[13] Defendants argue that the TDHCA should be dismissed from the suit because Plaintiffs do not name the TDHCA in any of their claims and therefore have not stated a claim upon which relief can be granted against that Defendant. Furthermore, Defendants assert that the TDHCA is a political subdivision of the State of Texas and, as such, is not subject to suit under § 1983. Plaintiffs concede the point and assert that their claims are only against the Individual Defendants and not the State of Texas. Document No. 39 at 1. Therefore, TDHCA is DISMISSED on Plaintiffs' acknowledgment that it was improvidently named as a Defendant.

[14] Document No. 27 at 12-14.

[15] For example, Plaintiffs state that "the Headquarters Staff defendants began to believe that persons affiliated with HESTON, including but not limited to plaintiff AL-FOUZAN had spoken to Rep. Lee and others about TDHCA" and "The Headquarters Staff defendants retaliated against HESTON and AL-FOUZAN based on these beliefs . . . ." <u>Id.</u> at ¶¶ 71-72; *see also* <u>id.</u> at ¶¶ 31, 34, 49, 50, 52-54.

contractual performance and in terminating the AHPP Grant Contract."[16]

To recover on a First Amendment retaliation claim, Plaintiffs must show that: (1) they suffered an adverse employment action; (2) their speech involved a matter of public concern; (3) their interest in commenting on matters of public concern outweighs the public employer's interest in efficiency; and (4) the speech motivated the adverse employment action. DePree v. Saunders, 588 F.3d 282, 286-87 (5th Cir. 2009). In other words, "[t]o prevail, [plaintiff] must show that she engaged in protected conduct and that it was a motivating factor in her discharge." Beattie v. Madison Cty. Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001). An independent contractor can bring a First Amendment retaliation claim, just as a public employee could. Board of Cty. Comm'rs v. Umbehr, 116 S. Ct. 2342, 2346 (1996); O'Hare Truck Service, Inc. v. City of Northlake, 116 S. Ct. 2353, 2359 (1996).

In Jones v. Collins, the Fifth Circuit considered a free speech retaliation claim brought by a Plaintiff who denied making the speech that was the basis of the retaliatory conduct. 132 F.3d 1048 (5th Cir. 1998). The Court stated that, "Assuming for the sake of argument that Jones's expression as perceived by Collins would have been subject to constitutional protection . . . , retaliation based on this perception, in the absence of any actual

---

[16] Id. at 13.

expression by Jones that is subject to First Amendment protection, does not constitute a constitutional violation." Id. at 1053; *see also* Barkoo v. Melby, 901 F.2d 613 (7th Cir. 1990); Fogarty v. Boles, 121 F.3d 886 (3rd Cir. 1997). Plaintiffs are correct that in Jones the plaintiff denied making speech, while here Plaintiffs neither admit nor deny making speech. However, as Plaintiffs' numerous citations on what constitutes constitutionally protected speech on a matter of public concern indicate, it is essential to know *what* is the alleged content or subject matter of the speech in order to analyze whether that speech is protected by the Constitution. With no allegation specifying *what* was the claimed protective speech that was made, Plaintiffs' allegation of free speech retaliation fails to state a claim upon which relief can be granted.

    2.   Fifth Amendment and 42 U.S.C. § 1983 Due Process Claims

Plaintiffs' Counts II and IV each vaguely assert a denial of due process: Count II cites the Fifth Amendment of the United States Constitution, and Count IV boils down to its title, "Violation of 42 U.S.C. § 1983 by deprivation of due process by the headquarters staff defendants in their personal capacity."[17] Defendants point out, and Plaintiffs concede, that it is the Fourteenth Amendment, rather than the Fifth, that would apply to

---

[17] Document No. 27 at 14, 14-17.

state actors and should be the basis for pleading a due process claim.[18] Furthermore, as discussed above, Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. Albright, 114 S. Ct. at 811. Plaintiffs' Count IV is their second attempt to plead some kind of a § 1983 claim for a violation of due process, presumably premised on cancellation of the contract Heston had with TDHCA, although Plaintiffs have pled no additional facts to support such a claim.

The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 96 S. Ct. 893, 902 (1976) (citations and quotation marks omitted). Due process requires, at a minimum, "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 70 S. Ct. 652, 656-57 (1950); *see also* Cleveland Bd. of Educ. v. Loudermill, 105 S. Ct. 1487, 1493 (1985) ("'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" (emphasis in original))

---

[18] Document No. 32 at 3; Document No. 39 at 10.

(quoting Boddie v. Connecticut, 91 S. Ct. 780, 786 (1971)); Hatteras v. Sw. Bell Tel. Co., 774 F.2d 1341, 1343 (5th Cir. 1985) ("Generally, a hearing must be made available before the state or its agents deprive a citizen of her property."). "[T]he timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved. These include the importance of the private interest and the length or finality of the deprivation, the likelihood of government error, and the magnitude of the government interest involved." Hatteras, 774 F.2d at 1343 (quoting Logan v. Zimmerman Brush Co., 102 S. Ct. 1148, 1157 (1982)); *see also* Mathews, 96 S. Ct. 893 (outlining balancing approach for determining the "specific dictates of due process").

In Count IV of Plaintiffs' complaint--although not in Count II--Plaintiffs state that the AHPP Grant Contract created a vested property interest for Heston.[19] Defendants do not contest that a contract creates a property interest for Heston under Texas law.[20] However, Plaintiffs do not allege what process, if any, was given or available to Heston or what process should have been available but was denied to Heston regarding the contract and its ultimate termination.[21] Plaintiffs allege that the "TDHCA Headquarters Staff contrived to create and to perpetuate the knowingly false claim

---

[19] Document No. 27 at 16.

[20] Document No. 32 at 10.

[21] Id. at 10-11.

that HESTON was not in compliance with contract requirements and that HESTON refused to so comply."[22] They also claim that HESTON was required "to undergo multiple, unnecessarily demanding audits, in the apparent hope that some reason could be found to claim HESTON was delinquent in its contractual performance, but HESTON passed all such audits."[23] And finally, Plaintiffs assert that:

> TDHCA headquarters' staff through a wrongful manipulation of public authority disciplined to a predetermined result and without regard for lawful obligation to the contrary, prevailed upon TDHCA to ultimately refuse to pay HESTON for the work completed under the Contract, instead terminating the Contract on the pretext that HESTON was in default.[24]

As observed above, however, nowhere in Counts II or IV or elsewhere in the pleading do Plaintiffs allege what, if any, process was given or available to them, or what process should have been given or made available but was denied to them, and they have therefore failed to state a plausible claim for relief. *See* Tamfu v. Natarajan, Civ. A. No. SA-11-CA-758-FB, 2011 WL 6328697, at *8 (W.D. Tex. Dec. 15, 2011) (dismissing complaint alleging procedural due process violations because plaintiff "'failed to allege with particularity what processes he was due . . . from the [defendant]

---

[22] Document No. 27 at 11. Plaintiffs repeat this assertion, in slightly different terms in paragraphs 59-61. Id.

[23] Id.

[24] Id. at 12.

15

that he did not receive.'" (quoting <u>Brown v. Texas A&M Univ.</u>, 804 F.2d 327, 334 (5th Cir. 1986))).

### 3. <u>Fifth Amendment Equal Protection Claim</u>

Plaintiffs' Count III conclusorily asserts a violation of the Equal Protection Clause of the Fifth Amendment. As with due process, the Fourteenth Amendment is the proper vehicle for bringing such a claim against state officials. Plaintiffs allege that Defendants violated the Equal Protection Clause by subjecting them to different treatment from others similarly situated without a legitimate basis.[25]

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." <u>Williams v. Bramer</u>, 180 F.3d 699, 705 (5th Cir. 1999) (quoting <u>Johnson v. Morel</u>, 876 F.2d 477, 479 (1989)). To bring a "class of one" claim under the equal protection clause, a plaintiff must allege that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Vill. of Willowbrook v. Olech</u>, 120 S. Ct. 1073, 1074 (2000). "Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to

---

[25] Document No. 27 at 15.

classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws. Mahone v. Addicks Util. Dist. of Harris Cty., 836 F.2d 921, 932 (5th Cir. 1988).

Plaintiffs do not state any facts to show that they were treated differently from others similarly situated, nor do they even specify what treatment was discriminatory. Perhaps they are referring to the termination of Plaintiffs' contract but even this is not clear from the pleadings. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 127 S. Ct. at 1965. Plaintiffs have wholly failed to state a claim for a violation of the Equal Protection Clause under the Fourteenth Amendment.

### III. Order

For the foregoing reasons, it is

ORDERED that Defendants' 12(b)(1) Motion to Dismiss for lack of standing Naji Al-Fouzan's claim for free speech retaliation is GRANTED, and Plaintiff Al-Fouzan's free speech retaliation claim is DISMISSED for lack of jurisdiction. It is further

ORDERED that Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim (Document No. 32) is in all things GRANTED with respect to Defendants Michael Gerber, Martin Rivera, Jr., Marisa Callan, and Timothy Irvine, and Plaintiffs' claims are

DISMISSED with prejudice.  Defendant Texas Department of Housing and Community Affairs is DISMISSED as a party that was improvidently named by Plaintiffs as a Defendant when Plaintiffs insist they have no claim against TDHCA.[26]

   The Clerk will enter this Order and provide a correct copy to all parties.

   SIGNED in Houston, Texas, on this 15th day of March, 2012.

                              _____
                                   EWING WERLEIN, JR.
                              UNITED STATES DISTRICT JUDGE

---

[26] This is Plaintiffs' second effort to present a complaint upon which relief can be granted, and Plaintiffs made this second effort after having had the benefit of Defendants' initial Motion to Dismiss, which pointed out many of the same inadequacies that Plaintiffs reiterated in their second effort.  Plaintiffs in their Response to the present Motion to Dismiss do not represent that they can materially or substantively improve their complaint if given the chance to file a third complaint, nor have they presented the Court with any proposed amendment.  They do ask to amend merely "to correct any minor errors (such as replacing 'Fifth Amendment' with 'Fourteenth Amendment')."  Document No. 39 at 11.  The Court has examined Plaintiffs' First Amended Complaint as if those corrections already have been made.  It would therefore be futile to permit Plaintiffs to file yet another complaint and their request further to amend is therefore DENIED.  See, e.g., Goldstein v. MCI WorldCom, 340 F.3d 238, 254 (5th Cir. 2003); McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 315 (5th Cir. 2002).